IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| FRANCES MAE CAREY, | ) | Case No. 08-44782-JWV |
| | ) | |
| Debtor. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| JAMES EDWARD MAYHUGH, | ) | Case No. 08-45040-DRD |
| MELODY ANN MAYHUGH, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | |
| LAVERNE PAUL SHARPES | ) | Case No. 08-45315-ABF |
| TINA MARIE SHARPES, | ) | |
| | ) | |
| Debtors. | ) | |

<u>MEMORANDUM OPINION</u>

The Chapter 13 Trustee moved to deny confirmation of each of these Debtors' Chapter 13 plans because such plans provide that the Debtors make postpetition mortgage payments directly to the respective mortgage holder, and not as part of their Chapter 13 plan payments to the Trustee. Since all of these Debtors are represented by the same counsel, and since the cases raise similar issues related to the enforceability of this Court's recent General Order creating Local Rule 3094-1,[1] I held

---

[1] *General Order Amending Local Rules 2016-1.F.1.b., 3070-1., 3083.1.C., and 3086.1.E and Creating Local Rules 3084.1.L. and 3094-1 Related To Mortgages Paid Through the*

a joint hearing, on March 2, 2009, to hear evidence in each of the cases. By separate orders, the Court will order that the Trustee's motions to deny confirmation be granted in each of the Debtors' cases.

Upon filing a Chapter 13 case, a debtor is obligated to file a plan setting out the treatment to be given to all such debtor's creditors.[2] Among other things, that plan is required to "provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan . . . ."[3] The Bankruptcy Code presumes that all payments to be made to pre-petition creditors will be made by the trustee out of such earnings or income: § 1326(c) provides that "[e]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan."[4] Whether a debtor, rather than the trustee, should be permitted to make ongoing postpetition mortgage payments is "very much a matter left to the considered discretion of the bankruptcy court."[5]

---

*Chapter 13 Plan*, dated Sept. 30, 2008, effective October 1, 2008, *available at* the Court's website, http://www.mow.uscourts.gov/General_Information/newrules/mtg/pymts.pdf (the "General Order").

[2] *See* 11 U.S.C. §§ 1321 and 1322.

[3] 11 U.S.C. § 1322(a)(1).

[4] 11 U.S.C. § 1326(c).

[5] *In re Foster*, 670 F.2d 478, 486 (5th Cir. 1982).

2

With regard to the postpetition mortgage payments, debtors in this district have historically chosen to either make such payments directly to the mortgage holder, or through their Chapter 13 plan. Effective October 1, 2008, this Court adopted new procedures for the payment of mortgage debt in Chapter 13 cases. Specifically, as relevant here, Local Rule 3094-1 now provides:

> 1. <u>Unmodified Payments on a note secured by real estate when the debtor is current on the date of petition</u>. When the debtor has no past due payments or charges due to the mortgagee other than the regular payment due in the month of filing or conversion, the debtor may make the post-petition payments directly to the mortgagee. If a debtor who has no past due payments or charges due to the mortgagee other than the regular payment due in the month of filing or conversion nevertheless decides to pay the post-petition payments to the claimant through the Chapter 13 trustee as part of the plan payment, Rule 3094-1.C.2 applies.
>
> 2. <u>Unmodified Payments on a note secured by real estate when the debtor is delinquent on the date of petition</u>.
>
>> a. For cases filed or converted on or after October 1, 2008, if a debtor is delinquent on the date of the petition on a note secured by real estate, the debtor shall make the post-petition payments to the mortgagee through the Chapter 13 trustee as part of the Chapter 13 plan payment unless the court orders otherwise. For purposes of Rule 3094-1, delinquent (or not current) means there are past due payments or charges due to the mortgagee other than the regular contractual payment due in the month of filing or conversion.[6]

In other words, if a debtor is current on mortgage payments at the time of the filing

---

[6] *General Order* at 4. Although still found in the General Order, and not as part of the Local Rules of Practice, for ease of reference, this rule is hereafter referred to as Local Rule 3094-1.

of the petition, the debtor has the choice of making the ongoing mortgage payments directly or through the Chapter 13 plan, as was the practice before the enactment of the Local Rule. For debtors who are delinquent on mortgage payments when the petition is filed, as all of the Debtors in these cases were, then the ongoing mortgage payments must be made through the plan, unless the Court orders otherwise. The Local Rules then go on to direct, *inter alia*, how such payments are to be handled by the Chapter 13 Trustee when the payments are made through the plan.

These procedures were adopted in response to the Court's concerns about the accuracy of the mortgage holders' and debtors' records when debtors were allowed to make payments on mortgages directly, rather than through the Trustee's office. As is now well-known, the company which originates a mortgage oftentimes does not retain that mortgage through payoff, or, in some instances, until the first payment even comes due. Instead, these mortgages are routinely packaged and sold, often piecemeal, and often a number of times before they are either paid off or written down. The result is that the mortgage holder (or servicer) in a Chapter 13 case may have changed over the course of the case,[7] and may not have accurate records as to

---

[7] *See* Gretchen Morgenson, *Guess What Got Lost in the Pool?*, New York Times, Sunday Business 1, March 1, 2009 (discussing loans that went into securitization trusts with defective documentation, making it difficult to even demonstrate who owns the loans); Mara Der Hovanesian, *When Mortgage Firms Don't Play Fair*, BusinessWeek.com, *available at* http://realestate.msn.com/buying/article_busweek.aspx?cp-documentid=2133885.

what payments were made by the debtor, and how such payments were applied, either prepetition or postpetition.[8]

The same record-keeping problem is true for debtors who, as was shown at the hearing in these cases, may make mortgage payments by buying money orders for cash at a convenience store and mailing them off to the last-known mortgage holder (or mortgage servicer). Such debtors may be unable, without great difficulty, to later prove that they in fact made any such payment.

Moreover, a debtor's payment amount often changes from time to time due to adjustable interest rates, or the accumulation of late fees and other charges, or changes in escrow amounts. Because debtors are frequently unaware of such changes for whatever reason, debtors often become increasingly delinquent without even knowing it.

As a result, prior to the adoption of these procedures, the Court was regularly faced with motions for relief from the automatic stay in which neither side was in a position, until the matter had been continued several times, to prove what payments

---

[8] *See, e.g., Litton Loan Servicing v. Garvida*, 347 B.R. 697 (B.A.P. 9th Cir. 2006) (mortgage servicer failed to comply with court order to provide accounting of loan balance); *In re Wines*, 239 B.R. 703 (Bankr. D. N.J. 1999) (inability to explain calculation of amount allegedly due); *Policing Lenders and Protecting Homeowners: Is Misconduct in Bankruptcy Fueling the Foreclosure Crisis?*, U.S. Senate Committee on the Judiciary, 110th Cong.. May 6, 2008 (Testimony of Katherine Porter, Associate Professor, University of Iowa College of Law), *available at* http://judiciary.senate.gov/pdf/08-05-06Porter_Testimony.pdf.

5

had been made, and how they had been applied. Being able to process these motions quickly is not only efficient, but is also mandated by law: unless the Court holds a hearing within thirty days after a motion for relief from stay is filed, and finds that the debtor has a reasonable likelihood of prevailing at a final hearing, which is to be held within an additional thirty days, the Court is obligated to lift the stay, and thereby allow the mortgage holder to foreclose on the home.[9] In addition, the Chapter 13 Trustee testified, and Debtors' counsel acknowledged that, even if no motion for relief is filed during the case, debtors in Chapter 13 are, with increasing frequency, finishing their cases with a significant deficiency due to changes in payment amounts or fees and charges, which are unbeknownst to them, and end up losing the house shortly after exiting bankruptcy.

Local Rule 3094-1 was carefully tailored to deal with these concerns. Many Chapter 13 debtors are current on their home mortgage, but nevertheless file for bankruptcy protection in order to deal with other debts. Many others, including all the Debtors here, seek bankruptcy protection to stop a foreclosure on their home. The Local Rule allows debtors who are current on their mortgage at the time of filing to continue making their payments directly to the mortgage holder, without Court

---

[9] 11 U.S.C. § 362(e)(1).

authorization.[10] As the Chapter 13 Trustee testified at the hearing on these motions, the rule thus recognizes that debtors who have reliably made their mortgage payments are presumed capable of continuing to do so. Such debtors are thereby obligated to make two periodic payments pursuant their plans: one directly to the mortgage holder, and the other to the trustee to deal with all other debts as provided in the plan.

As to debtors who are not current on their mortgages, however, experience has shown that such debtors often continue to miss or make late mortgage payments postpetition, thus creating the documentation and other problems described above. In addition, as the Trustee testified, experience has shown that the communication of changes in mortgage payment amounts and the addition of penalties and charges is far more reliable when they are made to the trustee than they are to the debtors. To remedy these situations, and to promote accountable and transparent record-keeping, the Local Rule presumes that mortgage payments from historically-delinquent debtors should be included in the plan payment to the trustee, "unless the Court orders otherwise."[11]

As stated by their counsel at the hearing, these Debtors do not challenge this Court's authority to require mortgage payments to be made through the plan. Instead,

---

[10] Local Rule 3094-1.C.1.

[11] Local Rule 3094-1.C.2.a.

7

these Debtors disagree with the placement of what is, in effect, a presumption on them. They contend that, rather than presuming that debtors who are in default on their mortgage at the time of filing should pay their mortgage through the trustee (unless such debtors prove otherwise), the Court should permit them to make direct mortgage payments unless *the trustee proves* that they are incapable of doing so. However, the procedures implemented by Local Rule 3094-1 (and the effective presumption) are consistent with the Bankruptcy Code.

We start with the premise that, in the face of a motion to deny confirmation, it is the debtor, and not the trustee, who has the ultimate burden of proving that a plan should be confirmed.[12] As stated above, § 1326(c) provides that the trustee shall make payments to creditors under the plan "[e]xcept as otherwise provided in the plan or in the order confirming the plan." While that section, and Local Rule 3094-1, do not bar debtors from making direct payments,[13] those provisions do not give them the

---

[12] *See In re Vantiger-Witte*, ___ B.R. ____, 2008 WL 4493426 at *3 (Bankr. N.D. Iowa 2008) ("Generally, the debtor has the ultimate burden to prove a Chapter 13 plan meets all the requirements for confirmation . . . ."); *In re Coleman*, 373 B.R. 907, 911 (Bankr. W.D. Mo. 2007) ("The burden of proof in an objection to confirmation in a Chapter 13 case is on the objecting creditor. The debtor then has the burden of coming forward with evidence to rebut any evidence introduced by the objecting creditor."); *In re Maronde*, 332 B.R. 593, 597 (Bankr. D. Minn. 2005) ("Debtor has the burden of proving that the conditions for confirmation have been satisfied.").

[13] *See In re Lopez,* 372 B.R. 40 (B.A.P. 9th Cir. 2007) (rejecting the Chapter 13 trustee's argument that the Bankruptcy Code does not permit a debtor to make direct payments in any circumstances).

8

unfettered right to do so in all cases. In other words, the language of § 1326(c) itself creates a presumption in favor of payments through the Trustee.

Moreover, under § 1325(a)(6), in order to confirm a plan, a court must find that "the debtor will be able to make all payments under the plan and to comply with the plan."[14] As will be shown below, none of these Debtors has demonstrated that they will be able to do so if they are allowed to make ongoing mortgage payments directly.

In support of the argument that requiring them to make mortgage payments through the plan hampers their ability to make payments under, and comply with, the plan, the Debtors make two primary arguments. First, they argue that they should not be required to incur the Trustee's fee, which is charged as a percentage of all payments made through the Trustee's office,[15] as to their mortgage payments. While such percentage varies over time based on the volume of payments running through the Trustee's office, the Debtors here assume a fee of 5.1%. However, as to payments that had been made pre-petition, these Debtors habitually incurred late charges of 5-6% for failing to make such payments on a timely basis. As a result, the Debtors are not much worse off paying the Trustee's fee than they were in consistently incurring

---

[14] 11 U.S.C. § 1325(a)(6).

[15] 28 U.S.C. § 586(e)(2).

late charges.[16]

Second, the Debtors argue that by requiring payments through the plan, they lose the "flexibility" needed to administer their plans. However, the Trustee testified that many debtors have historically used this "flexibility" to skip their mortgage payments, or to alternately skip mortgage and plan payments, attempting to catch up one with the payments that should go to the other. Debtors who are making mortgage payments directly rarely contact their attorney, much less the trustee, to advise them of any change in circumstances which might warrant filing an amended plan. The result is that, by the time a motion for relief is filed, it is often too late to suspend plan payments, amend the plan due to changed circumstances, or take some other action to save the residence. In many cases, this situation can be avoided if the problem is brought to light promptly, which occurs if the mortgage payments are being made through the plan, and the debtor becomes delinquent in plan payments.

Each of these Debtors is having their plan payments made to the Trustee by wage deduction,[17] meaning that their employers are deducting the plan payment amounts from their paychecks and transmitting those payments to the Trustee's office.

---

[16] In addition, it is expected, although not guaranteed, that as the volume of mortgage payments being paid through the Trustee's office increases, the percentage rate charged as the Trustee's fee on those payments will decrease.

[17] See Doc. #2 in each file.

10

However, since their plans propose direct payments on their mortgages, the amounts of such mortgages are not now being deducted from their paychecks. Given these Debtors' past payment histories, as will be shown, they have not demonstrated that their respective plans are feasible, if they are given the flexibility to either make such mortgage payments, or not. While there is a charge incurred from payment of the Trustee's commission, the impact of that charge is slight given that each of these debtors has regularly incurred late charges when they are given the discretion to make mortgage payments on their own.[18]

Section 1322(d) provides that Chapter 13 plans may not exceed sixty months in length. The evidence showed that, if each of these Debtors were to add their mortgage payment to the amount currently proposed to be paid to the Trustee, the result is that their plans would take longer to pay out, and/or that their monthly payment would be slightly higher.[19] However, the Debtors do not argue that they would not have the projected disposable income to make such payments over such period of time, nor do they argue that their plans would take longer than sixty months

---

[18] Local Rule 3094-1(C)(2)(g) provides that if the debtor's payments to the trustee are current when a mortgage payment comes due, that mortgage payment shall be deemed current despite any lag in the trustee distributing the payment to the mortgagee.

[19] As to Mayhugh, the plan would be lengthened from 48 to 59 months (with no increase in payment); as to Carey, from 57 to 60 months (with an increase of $31 per month); as to Sharpes, from 53 to 60 months (with an increase of $7 per month).

to amortize. Therefore, assuming these Debtors retain their current employment, and allow all payments (including mortgage payments) to be made to the Trustee by wage deduction, it would appear that they could propose confirmable plans. However, since none of these Debtors has demonstrated that they will reliably make mortgage payments themselves, the plans as proposed are not feasible.

*Frances Carey; Case No. 08-44782*

Frances Carey filed her Chapter 13 case on November 14, 2008 to stop a foreclosure on her home. She values the home at $96,000, with an allowed secured claim in the amount of $95,028.24. During 2008, Ms. Carey was never current on her mortgage, and incurred late charges of $48.17 each on seven separate occasions before she filed her petition in November. According to the Proof of Claim filed by the mortgage holder, Ms. Carey had a total arrearage of $4,912.65 when her petition was filed, which included four delinquent payments, plus late charges, NSF fees, prepetition attorneys' fees, escrow advances, and other costs. Ms. Carey lists a mortgage payment of $1,074,[20] which she proposes to pay directly to the mortgage holder. Her plan payment amount is $550, which is going to pay attorney fees, priority claims, the mortgage arrearage, and other secured claims. Unsecured creditors

---

[20] According to the mortgage holder's proof of claim, Ms. Carey's current mortgage payment amount is $863.33, although it appears that this does not include escrow charges.

are receiving nothing under the plan. Ms. Carey did not testify that she had experienced, or expects to experience, an increase in income (such that she is better able to make her mortgage payments in a timely fashion) and, in fact, she testified that, although she lists on Schedule I a $425 monthly household contribution from her partner, the partner is currently unemployed and is, therefore, not now making any such household contribution.

In sum, based on her history and current situation, Ms. Carey has not demonstrated that she is likely to be able to make her ongoing mortgage payments in a timely fashion. As a result, I find that she has not demonstrated that she "will be able to make all payments under the plan and to comply with the plan"[21] if she is permitted to make her ongoing mortgage payments directly to the mortgage holder. On the other hand, if Ms. Carey makes her ongoing mortgage payment through her plan, and assuming a Trustee's fee of 5.1%, her total plan payment amount will be $1,655 over sixty months, and she will incur a net increase in Trustee's fees of $2,415. She asserts that she should not be required to incur this additional cost, which requires her to stay in her case three months longer than she would if she were making the payments directly. However, I find that the plan is not feasible without the Trustee's oversight on the mortgage payments in this case, and that the costs associated with

---

[21] 11 U.S.C. § 1325(a)(6).

13

such oversight are an appropriate price to pay for making the plan feasible.

Consequently, the Trustee's motion to deny confirmation of her Chapter 13 plan will be granted.

*James and Melody Mayhugh; Case No. 08-45040*

James and Melody Mayhugh filed their Chapter 13 case on December 2, 2008 to stop a foreclosure on their home. They value the home at $80,000, with an allowed secured claim in the amount of $100,629.71.[22] During 2008, the Mayhughs were never current on their mortgage, and incurred late charges every month except for January in the approximate amount of $45 each. According to the Proof of Claim filed by the mortgage holder, the Mayhughs had a total arrearage of $7,293.94 when their petition was filed, which included six delinquent payments, plus late charges, prepetition attorneys' fees, escrow advances, and other costs. The Mayhughs say that their current payment amount on the mortgage is $956,[23] which they propose to pay directly to the mortgage holder. Their plan payment amount is $300, which is going to pay attorney fees, priority claims, the mortgage arrearage, and other secured claims.

---

[22] The Mayhughs are avoiding a second, wholly-unsecured, mortgage on the home.

[23] There is some confusion as to whether the Mayhughs successfully obtained a lower payment amount through a workout with the mortgage lender. Counsel stated at the hearing that he was working on straightening that situation out. For these purposes, they, and I, assume that the payment amount is $956 per month. The payment amount could be lower if the workout was, or is, successful.

Unsecured creditors are receiving nothing under the plan. Mr. Mayhugh testified that they had not experienced an increase in income (such that they are better able to make their mortgage payments in a timely fashion). He testified that Mrs. Mayhugh had been unemployed for four years and, although she was looking for a job, had not found one as yet. Their adult son lives with them and, currently, does not contribute to the household expenses. Mr. Mayhugh testified that the son had recently gained employment and that he "hoped" his son would start contributing to the household, but there certainly was no reliable evidence that he would, or that Mrs. Mayhugh will soon gain employment.

In sum, based on their history and current situation, the Mayhughs have not demonstrated that they are likely to be able to make their ongoing mortgage payments in a timely fashion. As a result, I find that they have not demonstrated that they "will be able to make all payments under the plan and to comply with the plan"[24] if they are permitted to make ongoing mortgage payments directly to the mortgage holder. On the other hand, if the Mayhughs make their ongoing mortgage payment through their plan, and assuming a Trustee's fee of 5.1%, their total plan payment amount will be $1,244 over sixty months, and they will incur a net increase in Trustee's fees of $2,528 as a result. They assert that they should not be required to incur this additional

---

[24] 11 U.S.C. § 1325(a)(6).

15

cost, which requires them to stay in their case eleven months longer than they would if they were making the payments directly. However, I find that the plan is not feasible without the Trustee's oversight on the mortgage payments in this case, and that the costs associated with such oversight are an appropriate price to pay for making the plan feasible.

Consequently, the Trustee's motion to deny confirmation of the Mayhughs' Chapter 13 plan will be granted.

### *Laverne and Tina Sharpes; Case No. 08-45315*

Laverne and Tina Sharpes filed their Chapter 13 case on December 23, 2008 to stop a foreclosure on their home. They value the home at $115,000, with a secured debt in the amount of $83,313.[25] During 2008, Mr. Sharpes testified that they incurred three late charges in the approximate amount of $20 each. They were three months delinquent when they filed their bankruptcy petition. The Sharpes say that their current payment amount on the mortgage is $808, which they propose to pay directly to the mortgage holder. Their plan payment amount is $300, which is going to pay priority claims, the mortgage arrearage, and other secured claims. Unsecured creditors are receiving nothing under the plan. Mr. Sharpes testified that they had not

---

[25] The mortgage holder in the Sharpes' case has not yet filed a proof of claim. Accordingly, this amount comes from their schedules.

experienced an increase in income (such that they are better able to make their mortgage payments in a timely fashion) and, in fact, that he had been laid off and was collecting unemployment. He also testified that they were no longer receiving the $250 per month in support for a nephew as was shown on their Schedule I. Mrs. Sharpes is also currently unemployed.

In sum, based on their history and current situation, the Sharpes have not demonstrated that they are likely to be able to make their ongoing mortgage payments in a timely fashion. As a result, I find that they have not demonstrated that they "will be able to make all payments under the plan and to comply with the plan"[26] if they are permitted to make ongoing mortgage payments directly to the mortgage holder. On the other hand, if the Sharpes make their ongoing mortgage payment through their plan, and assuming a Trustee's fee of 5.1%, their total plan payment amount will be $1,115 over sixty months, and they will incur a net increase in Trustee's fees of $2,032 as a result. They assert that they should not be required to incur this additional cost, which requires them to stay in their case seven months longer than they would if they were making the payments directly. However, I find that the plan is not feasible without the Trustee's oversight on the mortgage payments in this case, and that the costs associated with such oversight are an appropriate price to pay for

---

[26] 11 U.S.C. § 1325(a)(6).

making the plan feasible.

Consequently, the Trustee's motion to deny confirmation of the Sharpes' Chapter 13 plan will be granted.

For the foregoing reasons, I find that the plans as proposed in each of the above-captioned cases are not feasible. As a result, the Chapter 13 Trustee's motion to deny each of the plans will be granted. Orders in accordance with this Memorandum Opinion will be entered this same date.

/s/ Arthur B. Federman
Bankruptcy Judge

Date: 3/9/09